Good morning, Your Honors. I'm Allison Mendel for the defendant Duane Fields, Jr. I'd like to direct my oral argument to a couple of issues. One is my notice of supplemental authority about Elaine and the concept of sentencing for acquitted conduct. I am well aware that it's the law in this circuit that sentencing enhancements can be imposed for acquitted conduct, but I would submit that the reasoning of the line of cases culminating in Elaine really erodes the theory behind that law. I'm not sure how. Would you explain that? Well... Because you're talking about guidelines enhancements, right? That's correct. And, you know, I would cite back to Judge Fletcher's dissent in the Mercado case for the theory behind my argument. And, you know, it's not a direct effect of Elaine, clearly. I'm not arguing that. But the concept that a charge that's submitted to the jury on which the jury acquits can then be a partial basis for the defendant's sentence, in my mind... The reason is the difference in the proof. The burden of proof. At the time of Mercado, that might have been a problem. I mean, it would have been a problem as it turns out under Booker. But now that you have discretionary sentencing, what's the problem? Well, the logical argument underlying it is that obviously you could be guilty at a lower burden of proof and therefore we can sentence on it. But the concept of the jury system and the interposing the jury between the prosecutor and the accused, the judge and the accused, and the prosecutor chooses to put the charge to the jury and the jury acquits... Well, but the jury acquitting just says they find reasonable doubt. I understand that, Your Honor. And that leaves plenty of room for a judge to look at it and say, well, there may be a reasonable doubt, but by ponderance of evidence, I find it to be the case. I don't see any tension or inconsistency. And what does seem to have been somewhat Elaine-influenced or Harris-influenced was I gather that the district court here essentially refused to, or at least initially, review the amount of the drugs under Rule 29 because he said it's only about sentencing. Correct. I guess he was thinking that it was, although it was tried to the jury, it was not essential to be tried to the jury. As it turns out, though, it was essential to be tried by the jury and it was tried by the jury. Yes, yes. And I think that that's why the procedure here is so confusing when you read it in retrospect. But I think that's correct. And I don't think that under Elaine that what the judge did ultimately was an erroneous, I mean, I don't think that you could overturn it. No, because ultimately the question is was there sufficient evidence before the jury? Yes. And at some point you seemed to be arguing that there wasn't, but I couldn't tell whether you really were arguing that. Yes, I am arguing that there's insufficient evidence to support the drug quantity. And the specific, I mean, it's clear and everybody agrees that the amount of drugs that were discovered and attributed to my client was under the 500 grams. And the theory of the government is... But not by a lot. But not by a lot. The theory of the government is, well, and the judge specifically rejected answering the jury's question about money and not... But the answer seems to be, in fact, under our case law that if you do it properly you can extrapolate the money. Yes, but in this case the judge said you couldn't because... Did you tell the jury you couldn't or just didn't tell them you could? They didn't tell them they could. And so if they did, that would be fine, actually. Well, what the judge said in response in that argument about what to tell the jury was that because it was 500 grams of cocaine and there were other drugs present and there were other drugs involved, that money resulting from other conspiracies, other transactions, other kinds of drugs couldn't be attributed to the cocaine and so that there was no evidentiary connection there and they couldn't tell the jury that they could do that. So that sentencing, the district court recited some evidence, which was presumably before the jury as well, about I think it was Haines' testimony that every day they would go over to Mr. Fields' house and have a drug use event party and he witnessed him selling and whatever. And so the court seemed to think there was ample evidence that the jury could rely on to get up to the 500 grams. I think my difficulty with the evidentiary connection, Your Honor, has to do with the conspiracy and it's this three-person conspiracy that has to involve the 500 grams and there is very little evidence that these two co-conspirators were involved in any larger conspiracy. So that the conspiracy that was charged, Mr. Fields might have been, probably likely was engaged in broader drug dealing with other people at other times under other circumstances, but there's very little evidence tying this conspiracy, there is no evidence tying this conspiracy. And this conspiracy consists of the sister and... The sister and Mr. Haines, who are each, the evidence ties them to one transaction apiece and hanging around with Mr. Fields, which in itself is not part of the conspiracy and in fact the whole picture painted at trial and in other filings by the government is that, you know, it's sort of a party house, people show up and trade things and whatnot for drugs, that wasn't the conspiracy that those two people were involved in. They were probably taking drugs, using drugs, buying drugs for him, but that was not the conspiracy that was alleged. And that's the only conspiracy that was alleged? I believe so. Those three people by name? Yes, yes. I think that's correct. And the scope of that conspiracy is very narrow and when the government argues its sentencing about how you could construe that there was a larger, more long-lasting conspiracy, the government cites a whole bunch of other facts about the place in Mr. Fields, not about the participation of these two people. My understanding of the evidence that these people were involved in a long conspiracy was the content of the phone calls in which allegedly it sounded like they might have done this before, which is pretty thin as evidence of participation in a larger conspiracy and it also has no time constraints whatsoever on that evidence. Do you have a couple of minutes left? Yeah, I would like to reserve. Thank you, Your Honor. We'll hear from the government. May it please the Court, Stephen Collins on behalf of the United States in this appeal, and I was also trial counsel. If I may address briefly the beginning salvo of Ms. Mendel's opening. I don't think Elaine addresses Watts. I don't think it even is relevant to the issue of Watts. All right, but what about this question of the sufficiency of the evidence and the amount of evidence of the conspiracy? I think the language in Elaine has... What does Elaine have to do with it? I'm moving on from Elaine. Let's move on from Elaine. Okay. The sufficiency of the evidence, I think that as the District Court interpreted the laws as it was evident at the time, that the sentencing factor was something to be charged, was to be submitted to the jury, and was to be found beyond a reasonable doubt in addition to the core elements of the conspiracy. And procedurally, while the District Court delayed it... I want to know about the facts. Again, I'm moving on from all this. Why was there sufficiency of the evidence? On the 500 kilograms, is that what it is? 500 kilograms, which was... As to the conspiracy. As to the conspiracy. I do have something of the problem that Ms. Mendel is referring to, i.e., I understand that Mr. Field, there was pretty good circumstantial evidence that Mr. Fields was responsible for more than 500 grams, but this has to do with the scope of the conspiracy. The scope of the conspiracy that was charged in the indictment spanned a couple of months. And in the testimony of Mr. Haynes, he testified he'd been going to that trailer since sometime in November. Right, but Mr. Haynes was one of the people who were supposedly one of the conspirators, right? He was one of the conspirators, but that was not the extent. He said he was using a lot of drugs. If you just added his drugs up, it was probably enough to get Mr. Fields. But why is it enough to get the conspiracy? The conspiracy involved not only Mr. Haynes and Mr. Fields' sister, but there was also the woman whose trailer it was. The trailer was not lawfully owned by Mr. Fields. He was occupying it. I mean, like a bad odor, he permeated that trailer. The woman in the back room in the testimony at trial was that she had a counter-surveillance camera pointed out. Even though Mr. Haynes thought it was a foolish idea, there was a counter-surveillance in her bedroom, inside the bedroom, looking out through the window for the purpose of alerting anybody who might be approaching. Does the indictment say who was in the conspiracy? It identifies only Mr. Haynes as the other co-conspirator, even though the evidence was clear that Miss Bingham was also part of the conspiracy. And somehow some unnamed person you're now saying was also part of the conspiracy. The indictment alleged Mr. Haynes and others known and unknown to the grand jury. The trailer was not a party house. This was Mr. Fields' place of business. He used that place to sell his drugs, to store his drugs, to send out his minions to deliver the drugs on the street. And there was evidence of this in the trial? Yes. I mean, the evidence was not only that he directed Mr. Haynes and Miss Bingham within a week of each other to go out and make these deliveries. When the police entered the residence, they found the remnants of the brick, the gallon-sized bag, multiple scales, other bags that were packaged ready for sale, which just the ones by the bed were over 20 or close to 24 grams, the multiple cells. Again, I'm not interested. I understand that you can get Mr. Fields for a whole lot of cocaine. I'm trying to figure out about the conspiracy. For the conspiracy, for him to be responsible for the 500 grams would have been reasonably foreseeable that Mr. Fields, as part of this arrangement that he had set up, occupying this house with the consent of the owner, and sending out the minions, having his customers come, that he would reasonably intend to distribute more than 500 grams. Nothing he would, that the conspiracy was for that purpose. Well, the conspiracy was to sell as much cocaine. As Mr. Fields was concerned, it meant that he was ready, willing, and able and prepared to sell as much cocaine. And the customers for the cocaine were not just the Anchorage Police Department. The bags of cocaine found by the bed evidence that he was prepared to sell as much as he could. The brick that was in, the remnants of the brick in the downside. But he has to be prepared to do it as part of the conspiracy, not on his own, right? That's true. I mean, he was, but for the interception of law enforcement, he was going to continue. So I submit that the ready and willingness of the participants to go out and sell drugs in his behalf indicated that he was going to be using as many people beyond Mr. Haynes, beyond his sister, to further this criminal objective, which was to sell as much drugs as he could. Mr. Haynes testified, that's the only thing that Mr. Fields did, was sell drugs. And that's where he obtained his money from selling drugs. And that the, it was completely reasonable for the jury to infer that that's what Mr. Fields is intent with using these others, to sell at least 62 more grams of cocaine. And that he would have sold as much, 62 more grams, during the preceding two months that before the law enforcement went into the trailer. Does the indictment require that it be proven that Mr. Haynes was a part of the conspiracy for the entire period and had the intent? It seems to me it does, the way it's written. I think that it has to have been, he had to have agreed at one point and then his participation would have encompassed any time thereafter. He himself testified that his association with Mr. Fields preceded December, but that... His association in terms of buying from him. Correct. And not in terms of working with him to sell. Well, he testified that bringing customers to the trailer was part of that. He said that he was bringing customers to sell. I believe that's what he testified, that he was... That there was a gentleman, whose name escapes me at the moment, who was there at the time that the police officers entered the trailer, who was seeing... There was a conflict of testimony of whether this other individual was in the master bedroom at the time or was outside of the master bedroom. But Mr. Haynes testified that this particular individual, who he believed to be very wealthy, was a person that Mr. Haynes would take to Mr. Fields. And in that regard, he also testified that Mr. Fields, at one point, complained about losing a $20,000 investment. He did not know what the investment was, but the inference, the reasonable inference, is that if Mr. Fields was not or was only obtaining his money from the distribution of drugs, that the $20,000 was an indication that Mr. Fields was not just a part-time distributor, but a full-time distributor of controlled substances. Thank you. We have a couple of minutes for rebuttal. What was... I don't think I need two minutes because I think the Court is clearly aware of the issue here, but I would submit that... Was there evidence that Mr. Haynes was the one who brought this other person to the trial? Your Honor, I'm having great difficulty recalling that item. I think that there was evidence on that occasion, but once again we're back to roughly a five-day period where there's evidence that this conspiracy, such as it was, existed. Clearly these people knew each other before the conspiracy is alleged, but when the government refers to Mr. Fields' minions, it sounds as though that there's coming and going by this conspiracy selling drugs, and in fact the only evidence of that is this five-day period in January, and so the preexistence of this conspiracy, I just don't think that there is really any evidence in the record of that. Thank you. Thank you. The case is signed and will stand submitted. We'll take a ten-minute recess.
judges: Kozinski, Berzon, Ikuta